## GADDIE v. COLLINS OF KEN-TUCKY, Inc.

Court of Appeals of Kentucky.
May 2, 1952.

Mahan, Davis & Mahan, Edwin O. Davis, all of Louisville, for appellant.

Morris & Garlove, Louisville, for appellee.

MILLIKEN, Justice.

The appellant, Henry P. Gaddie, sued the appellee, Collins of Kentucky, Inc., upon an alleged contract of employment. The trial judge peremptorily instructed the jury to return a verdict for Collins of Kentucky, the defendant below, and it is from the judgment based upon this verdict that this appeal is taken.

In his petition Gaddie stated that on October 7, 1949, he entered into a contract with H. B. Ward, the manager of Collins' Louisville store to work for Collins for a period of ten months beginning October 10, 1949, at a salary of $75 a week for the first four weeks and at the end of the four weeks' period he was to be employed as manager of Collins' Louisville store at a salary of $85 a week "plus a commission of 1% of the gross of the defendant." The petition estimated the straight salary which Gaddie could earn under the contract at $3,345, and the commission at $1,125, and admitted that Collins had paid him a total of $375 before his summary dismissal on November 7, 1949. Gaddie, who had quit a $75 a week job in Louisville in order to accept the employment with Collins, declared that he was willing and ready to work at all times, and prayed judgment in the amount of $4,195 for Collins'. alleged breach of the contract.

Collins denied generally the allegations of the petition, answered affirmatively that the manager of its Louisville store, H. B. Ward, had no authority to bind Collins with respect to a commission to be paid Gaddie or any other employee, and further pleaded that Gaddie had released it from all claims in consideration of the payment to him of $75.

■■■ "Unless otherwise agreed, authority to manage a business includes authority to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it. * * * to employ, supervise or discharge employees as the course of business may reasonably require * * * and to direct the ordinary operations of the business." 2 Am.Jur., page 154. However, "it is a general rule that all cases of delegated authority where personal trust or confidence is reposed in the agent and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another unless there is a special power of substitution, either expressly or necessarily implied." 2 Am.Jur., pages 154, 155. Among the powers which ordinarily may not be delegated is an agency to manage premises. 2 C.J.S., Agency, § 134c(1); Smith v. Abbott, 221 Mass. 326, 109 N.E. 190. See, also, Restatement of the Law of Agency, Section 73, "Interpretation of Authorization to Manage a Business," and Section 81, "Authority of Servant to Delegate."

■■ The manager of a chain store undoubtedly is selected by his employer because it is believed that he may safely be entrusted with the general administration of the affairs of the employer at the particular store. It is hardly to be expected that the employer would authorize the transfer of the manager's responsibilities to another person without first having an opportunity to check the other person's qualifications. The application for employment filled out in this case required Gaddie to give references. As stated in Mechem on Agency, 2d Edition, Section 307, page 226: "Thus where an agent had been entrusted with the general administration of the affairs of a trading company, but no power to substitute others in his place had been given him, it was held that no such power could be implied, because there was evidently a confidence reposed in him which the company might not be willing to repose in others." The agent's power to create liability in the principal is a cogent reason for not implying the power of an agent to name his own successor without the principal's approval.

In the case at bar, Gaddie filled out an application for employment which was filed as an exhibit and in which it was expressly stated that he applied for the position of store manager. He admitted that he was paid in full for the four weeks he worked for Collins, and that he received $75 in addition as severance pay for which he

signed a receipt "for all services and claims to date."

At the close of Gaddie's evidence the court instructed the jury to find for Collins upon the theory that Ward, the store manager of Collins, had no implied authority to offer Gaddie a percentage of the gross sales as a matter of law and no express authority to do so had been shown. The court's conclusion in this respect is in accord with the general rule of law stated in 2 C.J.S., Agency, § 105, page 1262, which reads: "An ordinary power of hiring does not go so far as to authorize the agent by way of compensation to contract away to those so hired, by way of compensation or otherwise, any portion of the profits of the business, there being neither express authority or estoppel to sustain such an agreement. Proper inquiry must be made as to the agent's right to make profit-sharing agreements and the existence of the right be established thereby before it will be recognized as attaching to the authority to employ." See, also, Howard v. Winton Co., 199 Cal. 374, 249 P. 511, 47 A.L.R. 1012; Deffenbaugh v. Jackson Paper Mfg. Co., 120 Mich. 242, 79 N.W. 197; 1 Mechem on Agency, pages 711, 712.

In Howard v. Winton Co., 199 Cal. 374, 249 P. 511, 512, 47 A.L.R. 1012, the California Supreme Court held that the general manager of a branch of a business has no implied authority to contract to pay employees of such branch a share of the net profits of the business of the branch for services rendered. The court said: "The rule that a general manager or superintendent may not, in the absence of express authority, contract to distribute to employees a portion of the profits of a business would appear to be dictated by sound business considerations. Were the rule otherwise, and should it be held that such power fell within the implied authority of a general manager or agent, it might be carried to unreasonable limits. And persons entering into contracts for a portion of the profits of a business should, for their own protection, make inquiry as to the actual authority of a general manager or agent in this respect. In the absence of such inquiry or of an estoppel or ratification, the principal should not be bound by the provisions of such a contract."

It appears to be clear that Ward had the power to employ and discharge help as manager of the Louisville store, but there is no evidence that he had the power to choose his own successor as manager without such a choice being approved by his employer, Collins of Kentucky, Inc., the appellee. In his comment to the jury the trial judge said: "Ward had the authority apparently to do whatever was necessary in employing a person either as manager or in any other capacity, but he had no right to do anything extraordinary, to make any extraordinary promise."

As has been indicated, we find no evidence to the effect that Ward had the authority to choose his own successor as manager without the approval of the appellee, and, on the basis of the legal authority heretofore quoted, such authority should not be inferred as one of the implied powers of a store manager.

By the terms of Gaddie's pleading he was to be employed by Collins for four weeks as a salesman in order to afford him an opportunity to familiarize himself with the business and "at the end of said period of time plaintiff (Gaddie) was to be employed in the capacity of manager of defendant's (Collins') store." Since we have concluded that Ward had no implied power or authority as a matter of law to employ Gaddie as his successor as manager of Collins' Louisville store and no evidence of his express authority was shown, we conclude that the trial judge committed no prejudicial error when he directed a verdict for Collins at the close of Gaddie's testimony. Since Ward had no implied power to employ his successor as manager and no express authority to do so was established, the compensation which it was agreed Gaddie would receive as manager necessarily must fail too.

The judgment is affirmed.